UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GERALD MINGO | CIVIL ACTION |
| VERSUS | No.: 18-3056 |
| GREAT LAKES DREDGE & DOCK COMPANY LLC OF LOUISIANA | SECTION: "J"(4) |

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 26)** filed by defendant, Great Lakes Dredge and Dock Company LLC, ("Great Lakes"), an opposition thereto (Rec. Doc. 31) filed by Plaintiff, Gerald Mingo, a reply (Rec. Doc. 32) filed by Great Lakes and a supplemental opposition filed by Plaintiff (Rec. Doc. 38). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from a back injury sustained by Gerald Mingo, a fifty-six-year-old resident of Columbia, Missouri. Mingo was hired in January 2018 by Great Lakes as a deckhand and crew member aboard the DERRICK 69. Prior to being hired, Mingo underwent a physical to ensure he was fit for service. During the physical, Mingo disclosed prior work accidents to Great Lakes as well as his history of back and hip pain. Mingo indicated, however, that the pain was under control as long as he took Percocet when needed. After the physical, Mingo was declared fit for

all the necessary physical activities he was to undertake as a Great Lakes employee. (Rec. Doc. 31).

Other than Mingo, the crew of the DERRICK 69 consisted of deck captain Omar Celedon, crane operator Punlork Peou, and senior rigger Carl Callais. Callais, as senior rigger of the crew with over two years' experience, was assigned to be Mingo's "mentor," and help guide him through the beginning of his employment. (Rec. Doc. 26-6). The accident at issue occurred on January 15, 2018 after about a week after Mingo began his employment.

As part of his job training, Mingo was provided instructional materials detailing safe lifting practices. For purposes of this accident, the most important practice reiterated by Great Lakes, both in training videos and the SALT manual,[1] is that employees have "stop work authority" and should ask co-workers for assistance if the employee believes the lift is too strenuous for one person.[2] The SALT manual further recommends no solo lifts on objects over 50 pounds. (Rec. Doc. 31-9).

One of the crew's tasks the day of the incident was to lift the spud column. To lift the spud column, a "D-ring" must be manually lifted and placed on the crane's hook. (26-2). Earlier that morning, the crew performed a job safety analysis ("JSA") to prepare for the day's work. Mingo missed the JSA, although the crew gave him a synopsis when he arrived. Although typically a one-man job, it is not unheard of for two people to perform a D-ring lift. Callais was standing a few feet away from Mingo

---

[1] SALT stands for Save A Life Today. It is Great Lakes safety handbook.
[2] Stop-work authority requires a crew member to stop and wait for assistance when they encounter tasks they cannot undertake on their own.

2

during the entire lifting process, but Mingo never asked for assistance nor did Callais offer any. When Mingo attempted the D-ring life, he felt a "pop" in his back. (Rec. Doc. 26-3).

The day after the accident, Great Lakes personnel performed an accident recreation. At the recreation, Great Lakes measured the height of the crane hook, the weight of the D-ring, and demonstrated the common method of lifting the D-ring on to the hook. The crane's hook is approximately a foot off the deck of the barge. The D-ring weighed at 49.2 pounds as measured, exactly .8 pounds less than the recommended solo lift maximum. That measurement, however, only weighed the D-ring itself and two chain links. In contrast, the lift method demonstrated at the recreation shows that at its peak a D-ring lift requires the employee to lift the D-ring plus four or five chain links. (Rec. Doc. 26-2).

Mingo required a transforaminal lumbar interbody fusion because of his injury. He claims to be permanently unable to perform offshore work and heavy manual labor because of his injury. Great Lakes has paid Mingo's medical expenses pursuant to its cure obligation.

Mingo filed this complaint against Great Lakes under the Jones Act and for breach of warranty of seaworthiness under general maritime law. Great Lakes now argues in its motion for partial summary judgment that it was not negligent and that the DERRICK 69 was seaworthy.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

4

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

### I. JONES ACT NEGLIGENCE

The Jones Act "creates a statutory cause of action for negligence" for a seaman against his employer when he's injured in the course of employment. *Atl. Sounding Co., Inc. v. Townsend,* 129 557 U.S. 404, 415, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009). The seamen must prove his employer had a duty of care and breached that duty just as in ordinary negligence law. *Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331, 335 (5th Cir.1997) (en banc). But to prove causation, the seaman must only establish that the defendant's "negligence played any part, even the slightest, in producing the injury." *Chisholm v. Sabine Towing & Transp. Co., Inc.,* 679 F.2d 60, 62 (5th Cir.1982).

Great Lakes argues that Mingo was given proper training materials and orientation regarding lifting technique and procedure, that he could have asked for help or refused to lift the D-ring if necessary, that his prior work history made him

5

capable of knowing if he needed such assistance, and that he undersold his prior back history during his pre-employment physical. Citing evidence about its safety procedures and training, as well as Mingo's actions on the day of the accident and prior work history, Great Lakes argues summary judgment is appropriate on the breach and causation elements of Mingo's Jones Act claim.

Essentially, Great Lakes is asserting that Mingo has failed to allege any facts generating a genuine dispute that Great Lakes' breached its duty of care. The Court does not agree. Mingo has alleged a genuine dispute of material fact as to whether the D-ring lifting procedure on the DERRICK 69 was unsafe when performed by Mingo on January 15, 2018.

In *Thomas v. Hercules Offshore Services, L. L.C.*, the Fifth Circuit upheld a district court's grant of summary judgment against a seaman on a Jones Act negligence claim. 713 Fed. App'x. 382 (5th. Cir. 2018). The court in *Thomas* upheld the judgment because the plaintiff had not provided evidence of either (1) a violation of any marine safety regulations, (2) evidence of prior injuries incurred while performing the same task, *or* (3) expert testimony that the complained of condition or procedure was unsafe. *Id.* at 386. Thus, a plaintiff who has provided evidence of one of the above should survive summary judgment. Here, Mingo has provided two expert reports that claim the procedure for lifting the D-ring, as performed in Great Lakes own recreation, placed Mingo in an unsafe position. (Rec. Doc. 11-12). *See also Alvarado v. Diamond Offshore Management Co.,* No. 11-25 2011 WL 4915543 (E.D. La. Oct. 2011) (denying defendant's motion for summary judgment because "Plaintiff

asserts it will present evidence at trial, including the testimony of a health and safety expert, to prove that Defendant did not meet the standard of care required of a Jones Act employer."). Mingo's two expert reports alleging that the D-ring lifting procedure was unsafe and thus below the required standard of care of a Jones Act Employer create a genuine dispute as to a material issue of fact. (Rec. Doc. 11-12).

Great Lakes' reliance on its general safety and training procedures is similarly unpersuasive. The language and general posture of Great Lakes' safety materials places the onus solely on the employee to assert his stop work authority and ask for a load bearing assessment. (Rec. Doc. 31-9). Merely using language in safety materials that places the burden on the employee to recognize an unsafe situation does not, however, absolve employee's supervisors of a duty to prevent unsafe situations as well. The allocation of responsibility for making proper safety decisions must be analyzed on a case by case basis. *See Pallis v. U.S.*, 369 Fed. App'x 538 (5th. Cir. 2010) (upholding a judgment that failure to utilize stop work authority and assistance did not completely bar plaintiff's recovery); *see also Nichols v. Weeks Marine, Inc.,* 513 F. Supp. 2d 627 (E.D. La. June, 2007) (holding that failure of defendant to provide safe procedures for the precise task carried out by plaintiff gave rise to negligence claim); *Davis v. Abdon Callais Offshore, Inc.* No. 3:12-CV-00263 2013 WL 5775907 (S.D. Texas Oct. 2013) (denying defendant's motion for summary judgment even when plaintiff had stop work authority).

Defendant's rely heavily on *Giroir v. Cenac Marine Services, LLC*, No. 18-3595 2019 WL 1056862 (E.D. La. Mar. 2019), a case recently decided by another section of

this Court, in support of its motion. In *Giroir*, the defendant was granted summary judgment on the issue of Jones Act negligence because the plaintiff, a relief captain, failed to present any evidence on how the defendant was negligent in causing or contributing to the plaintiff's injuries. *Id.* at *6. The court in *Giroir* further noted that the plaintiff had failed to disclose his prior back injuries to his employer and could have asked a subordinate for assistance. *Id.*

There are, however, significant differences between the facts of *Giroir* and the present case. First, Mingo has provided two expert witnesses testifying that Great Lakes caused and contributed to Mingo's injuries by using a D-ring lift procedure that required Mingo to lift a weight greater than the recommended limit. Second, Mingo did disclose his history of back problems to the Great Lakes.[3] Finally, the plaintiff in *Giroir* was a relief captain, and as such solely responsible for the decision to engage in an unsafe work procedure. *Id* at *5 ("But, in this case, Mr. Giroir, as the relief captain of each CMS vessel, has admitted under oath that there is no evidence indicating that anyone was at fault (aside from himself)." Here, Mingo was the most junior member of the crew as opposed to the most senior. Although some of these distinctions may be minor, "[i]n the highly factbound world of negligence law, these distinctions [may] warrant a different result." *Davis*, 2013 WL 5775907 *3.

Finally, Great Lakes argues that Mingo himself was negligent. He failed to ask for help, he failed to use his stop work authority, he failed to properly disclose all of

---

[3] Defendant's assertions that Mingo did not fully disclose his back injuries are inapposite here. In Giroir, the plaintiff affirmatively withheld all information about prior back problems. Here, Mingo was very open with doctors about his back and hip problems. The only real dispute is over his characterization of how often and necessary his Perocet regimen was.

his back problems, and he made his negligent decisions with the background of seasoned offshore worker. Assuming arguendo that Mingo's own negligence contributed to his injuries, the Court must still deny Great Lakes' summary judgment motion.

The Jones Act "rejected the doctrine of contributory negligence in favor of that of comparative negligence." *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 542–43, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994)). Because of this shift, Mingo's recovery might be lowered by his alleged negligent acts, but it will not be completely barred. *See Johnson v. Cenac Towing,* 544 F.2d 296, 302 (5th Cir.2008) ("seaman's recovery is reduced in proportion to his fault"). It is not uncommon for courts to deal with dueling claims of negligence in Jones Act cases by reducing the seamen's recovery under the doctrine of comparative negligence. *See Grab v. Traylor Bros., Inc.,* 796 F.Supp.2d 788, 794 (E.D.La.2011) (limiting seamen's recovery by 50%); *see also Scott v. Fluor Ocean Servs., Inc.*, 501 F.2d 983, 984 (5th Cir.1974) (per curiam) and *Pallis* 369 Fed. App'x 538 (both upholding judgments limiting a seamen's recovery by 75% when he was egregiously at fault).

Considering the foregoing, the Court concludes the "questions of fact and law are too intertwined to grant summary judgment," and denies Great Lakes motion for summary judgment as regards Mingo's Jones Act negligence claims. *Alvarado* 2011 WL 4915543 *2.

**II.  UNSEAWORTHINESS**

9

"To establish a claim for unseaworthiness, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used." *Boudreaux v. United States of America,* 280 F.3d 461, 468 (5th Cir.2002) (quoting *Jackson v. OMI Corp.,* 245 F.3d 525, 527 (5th Cir.2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499–500, 91 S.Ct. 514, 517–18, 27 L.Ed.2d 562 (1971). "An unsafe method of work may render a vessel unseaworthy." *Rogers v. Eagle Offshore Drilling Services, Inc.*, 764 F.2d 300 (5th. Cir. 1985).

Although closely related, claims for Jones Act negligence and lack of seaworthiness have "subtle but meaningful distinctions." *Davis*, 2013 WL 5775907 *5. "An isolated personal negligent act does not render a vessel unseaworthy…to hold otherwise would eliminate the distinction between seaworthiness and negligence." *Rogers*, 764 F.2d 303 (citing *Usner*, 400 U.S. 494.) Furthermore, "the mere fact that an alternative method [of performing the task] is available does not render a vessel unseaworthy." *Id.* Finally, the standard needed to prove causation for unseaworthiness is stricter than for a Jones Act negligence claim. *Comeaux v. T.L. James & Co., Inc.,* 702 F.2d 1023, 1025 (5th Cir.1983).

Because Mingo's Jones Act claim is proceeding to trial, and the evidence presented in support of that claim will be substantially the same as the evidence supporting the unseaworthiness claim, the Court denies summary judgment on the unseaworthiness claim as well and will allow the full record to develop at trial for

both claims. *See Davis*, 2013 5775907 *5 ("[B]ecause the Court is allowing the negligence claim to proceed to trial, and the evidence presented in support of that claim will largely overlap with the seaworthiness evidence, the Court exercises its discretion to reserve ruling on the unseaworthiness claim until it has had the benefit of seeing the full record developed at trial.").

## **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Great Lakes' *Motion for Partial Summary Judgment* **(Rec. Doc. 26)** is **DENIED**.

New Orleans, Louisiana this 26th day of September, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE